UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


MICHAEL H. FITZPATRICK,                    )
TRUSTEE,                                   )
                                           )
      Plaintiff,                           )
                                           )
v.                                         )          No. 3:17-CV-257
                                           )
                                           )
LAW SOLUTIONS CHICAGO, LLC,                )
*et al.*,                                  )
                                           )
      Defendants.                          )


---


MICHAEL H. FITZPATRICK,                    )
TRUSTEE,                                   )
                                           )
      Plaintiff,                           )
                                           )
v.                                         )          No. 3:17-CV-258
                                           )
                                           )
LAW SOLUTIONS CHICAGO, LLC,                )
*et al.*,                                  )
                                           )
      Defendants.                          )


## MEMORANDUM OPINION AND ORDER

Finding that there were common questions of law and fact, this Court previously ordered these two civil cases[1] consolidated. The matters currently before the Court are two motions to dismiss, [Lead case, doc. 20 and Member case, doc. 21]. The defendants[2] who have been served

---

[1] Case number 3:17-CV-257 (the "Lead case") and case number 3:17-CV-258 (the "Member case").
[2] At the writing of this Memorandum Opinion and Order, defendant Jessica Odgie has not made an appearance in the Lead case.

process in the Lead case have filed a motion to dismiss plaintiff's[3] complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2) for (1) failure to state a claim and (2) lack of personal jurisdiction over defendants Doe and Heuser, [Lead case, doc. 20]. The defendants in the Member case have also filed a motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2) for (1) failure to state a claim and (2) lack of personal jurisdiction over defendants Solis, Brown, and Sheehan, [Member case, doc. 21]. The plaintiffs have responded to both motions, [Lead case, doc. 27 and Member case, doc. 23], and replies have been filed, [Lead case, doc. 32 and Member case, doc. 28]. The matters are ripe for review. Given the minimal variation between the parties' briefing for both of these motions, this Court will consider them simultaneously and refer to any difference of fact or argument as needed. For the reasons that follow, both of the defendants' motions, [Lead case, doc. 20 and Member case, doc. 21] will be **GRANTED** and both of these cases will be **DISMISSED**.

## I.      BACKGROUND

These two consolidated cases involve a similar set of circumstances which occurred within a reasonably close timeframe.  As required when this Court considers a motion to dismiss for failure to state a claim, the facts recited herein are taken from the complaints, "exhibits attached to the complaint[s], public records, items appearing in the record of the case[s] and exhibits attached to the defendant[s'] motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein…." *Rondigo, LLC, v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430

---

[3] Given that these two consolidated lawsuits are relatively the same factually and legally, this memorandum opinion will generally refer to both plaintiffs simultaneously for the sake of brevity and consistency. When there is need to distinguish the two, such specific reference should be evident.  "Trustee," the names of the individuals whom the Trustee represents, i.e. the estates of Annette Harris Haynes and Pamela Jo Hagstrom, and "debtor" should all be considered interchangeable with "plaintiff," unless otherwise noted.

(6th Cir. 2008)).  For purposes of these two motions to dismiss for failure to state a claim, the Court accepts the plaintiffs' allegations as true.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The defendant Law Solutions Chicago LLC d/b/a UpRight Law LLC ("UpRight Law") is a national law firm which specializes in representing clients considering bankruptcy.  All of the individually named defendants are either licensed attorneys associated with the firm or non-attorney staff employees who assist with the legal operations of UpRight Law.  While UpRight Law maintains an office in Chicago, Illinois, it advertises its services to potential clients outside of the state through the internet.  Typically, out-of-state potential clients who contact UpRight Law via the telephone will initially speak with non-attorney staff in the Chicago office before their call is transferred to an attorney.  After the initial consultation, UpRight Law will then turn the client's case over to be handled by a partner attorney in the appropriate jurisdiction for representation.

### A.  Lead Case: Annette Harris Haynes

On December 7, 2015, Annette Haynes, a Tennessee resident, contacted UpRight Law via telephone to inquire about filing for bankruptcy relief.  Her call was initially answered by defendant George Doe, who is a non-attorney staff employee of UpRight Law.  During this initial phone conversation, Doe, who is not licensed to practice law, encouraged her to pursue bankruptcy and affirmed that she would be allowed to keep her truck through the bankruptcy.  Shortly thereafter, the plaintiff's call was transferred to Austen Heuser, a member of the Illinois bar and licensed attorney for UpRight Law.  Heuser is not licensed to practice law in the state of Tennessee. During their phone conversation, Heuser provided legal advice to the plaintiff regarding Chapter 7 and Chapter 13 forms of bankruptcy relief, and negotiated a fee of $1,685.00 to undertake representation of the plaintiff in a Chapter 7 bankruptcy case.

At some time after the initial call was completed[4], Jessica Odgie, another non-attorney staff employee of UpRight Law, initiated a call with the plaintiff, following up on the previous call that had been made earlier that day. Odgie instructed the plaintiff to stop all payments on unsecured debts, and offered other legal advice with respect to the effects of a bankruptcy discharge. Odgie confirmed the fee of $1,685.00 for the representation of a Chapter 7 bankruptcy proceeding.

Sometime afterwards, UpRight Law referred the plaintiff's case to Grace Gardiner, a partner attorney licensed to practice law in the state of Tennessee, who is based in Knoxville, Tennessee. Gardiner was assigned the plaintiff's case to file the Chapter 7 bankruptcy in the state of Tennessee. Gardiner had an assistant, Judy Lovely, who is not an attorney. The plaintiff did not live in Knoxville herself, and therefore was required to make trips to Knoxville for the preparation of her case, most of which, she claims, was handled by Lovely. The plaintiff met with Lovely and discussed the requirements to file a Chapter 7 bankruptcy case, and Lovely advised the plaintiff that she would actually be required to file a Chapter 13 due to her income level. Although the plaintiff had signed a retainer agreement for representation for a Chapter 7, an additional retainer agreement was required for a Chapter 13. The plaintiff never signed the Chapter 13 agreement, and alleges that UpRight Law "cut and pasted" the plaintiff's signature from the prior Chapter 7 retainer agreement to the Chapter 13 agreement without the plaintiff's consent.[5]

Furthermore, the change to a Chapter 13 filing required an additional $1,315.00 retainer fee. Before her case was filed, the plaintiff had paid $1,900.00 to UpRight Law. The plaintiff met her attorney, Grace Gardiner, face to face for the first time at the 341 meeting of creditors on March

---

[4] The plaintiff's reply [sic] in opposition to the defendant's motion states that after the original call was completed with Doe, "an unidentified employee of Up[R]ight initiated a call to [plaintiff]" who "was eventually connected with [] Heuser." [Lead case, doc. 27 at PageID # 210]. This chain of events is somewhat inconsistent with the allegations in the plaintiff's complaint, and therefore, the Court will assume the complaint's sequence of events for purposes of this memorandum opinion.

[5] The complaint confirms that the plaintiff never signed the Chapter 13 retainer agreement, but alleges upon information and belief that UpRight Law cut and pasted the signature without her consent.

23, 2016. The plaintiff claims she was never advised that she would have to attend court in Knoxville for the 341 meeting of creditors.[6] Furthermore, Gardiner had failed to file a number of required documents in the plaintiff's Chapter 13 case, which ultimately led to sanctions by the bankruptcy court. Gardiner's improper handling of the plaintiff's bankruptcy case resulted in her suspension from practice in the United States Bankruptcy Court for the Eastern District of Tennessee for five years.

After Gardiner was sanctioned, UpRight Law agreed to disgorge the $1,900.00 of fees that the plaintiff had paid prior to the filing of the Chapter 13 bankruptcy petition. The plaintiff subsequently hired another law firm to complete her bankruptcy case.

### B. Member Case: Pamela Jo Hagstrom

The facts of the Member case are very similar. On March 1, 2016, Pamela Hagstrom contacted UpRight Law via telephone to inquire about filing for bankruptcy relief. Angelo Solis, a non-attorney staff employee of UpRight Law, answered the plaintiff's call initially. During the conversation, Solis provided advice on both Chapter 7 and Chapter 13 forms of bankruptcy relief, and solicited the plaintiff to use UpRight Law's legal services. He represented to the plaintiff that she would be able to file a Chapter 7 bankruptcy petition, and advised her as to the implications of a discharge, the effects of a reaffirmation agreement, the proper way to handle a related state court lawsuit, and the effects bankruptcy would have on the plaintiff's credit score. Solis negotiated a fee of $1,535.00 for the representation of the plaintiff in her Chapter 7 bankruptcy case, of which the plaintiff agreed to pay $1,200.00 before the bankruptcy petition was filed.

---

[6] The Court notes that although the plaintiff alleges this fact in paragraph 37 of her complaint, the Chapter 7 retainer agreement signed and initialed by the plaintiff and attached to her complaint as Exhibit 1 states that "[o]nce your case is filed, you will have to attend a first meeting of creditors where you will be questioned under oath by a court official called a 'trustee.'" [Lead case, doc. 1-1 at PageID # 45].

On March 3, 2016, Jacob Brown, a member of the Illinois bar who is not licensed to practice law in the state of Tennessee, initiated a follow-up call to the plaintiff, during which he instructed her to stop all payments on unsecured debts, and offered advice regarding the effects of a bankruptcy discharge. Brown also reiterated to the plaintiff that she would have no problem filing a Chapter 7 bankruptcy petition, and voiced his advice regarding a related state court lawsuit.

Sometime later, the plaintiff's bankruptcy case was referred to Grace Gardiner, a licensed attorney in the state of Tennessee, to prepare and file the appropriate forms for the Chapter 7 bankruptcy case in Tennessee. Gardiner apparently miscalculated the plaintiff's income for determining the means test, and incorrectly determined that the plaintiff was not eligible to file a Chapter 7 bankruptcy petition. Contrary to the attorney's understanding, the plaintiff was eligible to file a Chapter 7 petition. However, as a result of this miscalculation, the plaintiff was told that she would be required to file a Chapter 13 bankruptcy petition, which resulted in an additional $1,456.00 attorney fee.

This increase in price prompted the plaintiff to request a refund. After the plaintiff's request, Matt Sheehan, a non-attorney staff employee for UpRight Law, contacted the plaintiff via telephone to attempt to salvage the situation. During their conversation, Sheehan told the plaintiff that she would only be paying a fraction of her debt under a Chapter 13, advised her that she could buy a new car in a Chapter 13, and stated that this bankruptcy filing was more advantageous than a Chapter 7 filing. Ultimately, the plaintiff agreed, and on April 18, 2016, a Chapter 13 petition for relief was filed.

Subsequently, Gardiner was suspended from practicing in the United States Bankruptcy Court for the Eastern District of Tennessee. UpRight Law disgorged the $1,200.00 of fees that

plaintiff had paid prior to the filing of her petition, and thereafter, the plaintiff retained a different law firm to complete her bankruptcy.

## II.    DISCUSSION

After consolidating these two cases, this Court ordered the parties to submit briefs regarding their position on the issue of this Court's abstaining from hearing these cases. Although this Court has original jurisdiction over all cases "arising in or related to cases under title 11," it may "in the interest of justice, or in the interest of comity with State courts or respect for State law, [] abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334. As outlined in the complaints, these lawsuits are brought under this Court's jurisdiction because the allegations "are related to, arise in, and arise under the pending Chapter 7 bankruptcy case[s]." [Lead case, doc. 1 at PageID # 1 and Member case, doc. 1 at PageID # 1].

Both of the parties submitted argument that this Court should retain jurisdiction and authority over these two lawsuits rather than exercising the power of permissive abstention available under 28 U.S.C. § 1334(c)(1).[7] The Court agrees with the parties that even though the claims asserted in these lawsuits are uniquely state law claims, the exercise of permissive abstention in this case is unwarranted and would likely have an adverse effect on the administration of the pending bankruptcy proceedings as well as the efficient administration of justice.[8] Therefore, this Court will retain jurisdiction over these two consolidated cases. The parties'

---

[7] The Trustee's brief further argued that this Court has exclusive jurisdiction under 28 U.S.C. § 1334(e), a position which the defendants disagree with. This Court's exercise of permissive jurisdiction over these lawsuits renders this argument moot; as such, this memorandum opinion makes no holding on this issue.

[8] Although the claims asserted in these lawsuits include the unauthorized practice of law, negligence per se, professional negligence, and fraud, the factors which most heavily support this Court's retention of jurisdiction over these lawsuits include efficiency, the importance of this Court regulating the practice of law within its own venues, and the current procedural posture of these lawsuits, both of which were originally filed in this Court and therefore could not be remanded to state court.

briefing between these two lawsuits is almost identical, and therefore will generally be considered simultaneously.

## A. Rule 12(b)(2)/LACK OF PERSONAL JURISDICTION

Given that the defendants have moved to dismiss all counts of the complaints against all defendants, this Court will first address the question of personal jurisdiction, as is may potentially be dispositive as to the claims against many of the named defendants. The defendants move to dismiss the plaintiffs' claims on the basis that this Court lacks personal jurisdiction over defendants Doe and Heuser in the Lead case and defendants Solis, Brown, and Sheehan in the Member case. In support of these motions, the defendants seemingly rely upon the standards set out in *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945), by arguing that it would offend traditional notions of fair play and substantial justice to hale these particular defendants into the present forum.[9] The defendants claim that any contacts these defendants had with the state of Tennessee "was at most random, fortuitous, and attenuated and does not rise to the level of the [sic] purposeful availment." [Lead case, doc. 21 at PageID # 142 and Member case, doc. 22 at PageID # 147].

The plaintiffs respond to the defendants' personal jurisdiction argument, citing *Burger King Corp. v. Redzewicz*, 471 U.S. 462, 475 (1985) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) as the standard for determining this Court's jurisdiction over defendants Doe and Heuser in the Lead case and defendants Solis, Brown, and Sheehan in the Member case. The plaintiffs assert that these defendants have "personally availed themselves to

---

[9] The defendants cite to this Court's previous opinion in *Carlisle v. Winona Health Services*, No. 2:11-CV-179, 2012 WL 2120714, at *1-3 (E.D. Tenn. May 31, 2012) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)) to establish the legal standard for holding personal jurisdiction over out of state defendants. Although this Court's prior opinions are persuasive authority, this Court first looks to binding precedent when establishing legal standards for review.

the jurisdiction of this court by engaging in the practice of law within this state." [Lead case, doc. 27 at PageID # 222 and Member case, doc. 23 at PageID # 164].

All parties agree that both of these cases are related to proceedings filed under Chapter 11 of the United States Code.[10] The Federal Rules of Bankruptcy Procedure govern the procedure in cases arising under title 11 of the United States Code. *See* Fed. R. Bankr. P. 1001. This case is considered an adversary proceeding under the Federal Rules of Bankruptcy Procedure because it is a "proceeding to recover money or property"; such proceedings are "governed by the rules of [] Part VII" of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7001. These rules were designed to govern the procedural aspects of litigation involving bankruptcy related matters, and are based on the premise that, to the extent possible, practice before the bankruptcy courts and the district courts should be relatively the same.[11]

Federal Rule of Bankruptcy Procedure 7004 provides that

> [i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Fed. R. Bankr. P. 7004(f). In essence, personal jurisdiction under this Rule is a three-part test: (1) the defendant must be properly served pursuant to this Rule; (2) the case is one under the Bankruptcy Code, or is a civil proceeding arising under the Bankruptcy Code or arising in or related to a case under the Bankruptcy Code; and (3) the exercise of jurisdiction is consistent with the Constitution and laws of the United States.

---

[10] *See* [Lead case, doc. 40 at PageID # 321 and doc. 41 at PageID # 325 and Member case, doc. 36 at PageID # 296 and doc. 37 at PageID # 300].

[11] *See* Fed. R. Bankr. P. 7001 advisory committee's note.

Contrary to the parties' assertions, this Court's exercise of personal jurisdiction over these defendants is *not* subject to the standards set out in *International Shoe*, because this Court is not sitting in diversity.[12]   Rather, as stated above and as agreed by both parties,[13] this Court has retained jurisdiction over these cases in accordance with its original subject matter jurisdiction over any and all proceedings arising in or related to a case under title 11 of the United States Code, pursuant to 28 U.S.C. § 1334(b).

In adversary proceedings, Federal Rule of Bankruptcy Procedure 7004 authorizes personal service of "[t]he summons and complaint and all other process except a subpoena . . . anywhere in the United States."   Fed. R. Bankr. P. 7004(d).   The Sixth Circuit has repeatedly held that, when Congress provides for service of process beyond the territorial limits of the state in which the district court sits—such as a federal statute which provides for nationwide service of process—the strictures of *International Shoe* do not apply.  *See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 824, 826 (6th Cir. 1981); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993). Rather, in these instances, "the question becomes whether the party has sufficient contacts *with the United States*, not any particular state."  *United Liberty Life Ins. Co.*, 985 F.2d at 1330 (6th Cir. 1993) (emphasis added) (quoting *Haile*, 657 F.2d at 824, 826).  Therefore, an exclusive inquiry into the defendants' contacts with the forum state—Tennessee—is inapposite.

---

[12] *See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 824, 826 (6th Cir. 1981) (stating that "[i]n an action where service of process is effected pursuant to a federal statute which provides for nationwide service of process, the strictures of *International Shoe* [*Co. v. State of Washington*, 326 U.S. 310 (1945)] do not apply"); *see also Medical Mut. of Ohio v. deSoto*, 245 F.3d 561, 567-68 (6th Cir. 2001) (explaining that "[w]hen . . . a federal court sitting pursuant to federal question jurisdiction exercises personal jurisdiction over a U.S. citizen or resident based on a congressionally authorized nationwide service of process provision," the individual's due process right not to be subject to extra-territorial jurisdiction without a sufficient relationship with the state asserting jurisdiction is not threatened); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993).
[13] *See* [Lead case, docs. 40 and 41 and Member case, docs. 36 and 37].

Having set out the correct legal standard for this Court's exercise of personal jurisdiction over these particular defendants, the Court now turns to the facts of these cases to determine whether such an exercise would be proper.

**Personal Jurisdiction Over Defendants Doe, Heuser, Solis, Brown, and Sheehan**

As to the first requirement, the record reflects that both Doe and Heuser were served process in this matter via personal service in the Lead case. *See* [Lead case, docs. 11 and 12]. In the Member case, defendants Solis, Brown, and Sheehan were all served process via personal service as well. *See* [Member case, docs. 11, 12, and 13]. Federal Rule of Civil Procedure 4, incorporated by Rule 7004 of the Federal Rules of Bankruptcy Procedure, allows for service to be made by delivering a copy of the summons and the complaint to the individual personally. Fed. R. Civ. P. 4(e). The affidavits included in docket entries 11 and 12 in the Lead case and entries 11, 12, and 13 in the Member case show that Doe, Heuser, Solis, Brown, and Sheehan were properly served process, and the defendants have not argued otherwise.[14] Given the record before the Court and the failure of the defendants to challenge the sufficiency of process or service of process in their motions to dismiss, the Court concludes that service of process was sufficient for all of these named defendants, and therefore part one of the test for personal jurisdiction is satisfied in both cases.

The second requirement has been discussed above. All parties agree that both of these lawsuits are related to a case brought under the Bankruptcy Code.[15] Therefore, the Court finds the second part of the personal jurisdiction test satisfied as to both cases as well.

---

[14] *See* Federal Rule of Civil Procedure 12, as incorporated by Federal Rule of Bankruptcy Procedure 7012, stating that a party waives a defense of insufficient process or service of process by failing to raise it by motion.

[15] *See supra* note 10.

Regarding the third requirement, any relevance that the defendants' minimum contacts argument may have to the question of personal jurisdiction would arise at this juncture. While the Court recognizes that if it were sitting in diversity, the facts relied upon by the plaintiffs in holding personal jurisdiction over these defendants may have presented a close call, the parties have not provided—nor has the Court found—any statutory or Constitutional impediments to this Court's exercise of personal jurisdiction over these defendants in these cases. As previously identified above, when nationwide service of process is authorized by a federal statute, this Court looks to the minimum contacts the defendants have with the United States as a whole. *See Med. Mut. of Ohio v. deSoto*, 245 F.3d at 567-68. Without question, Doe, Heuser, Solis, Brown, and Sheehan have sufficient minimum contacts with the United States. The defendants concede that Doe, Heuser, Solis, Brown, and Sheehan live and work in the state of Illinois. *See* [Lead case, doc. 21 at PageID # 140 and Member case, doc. 22 at PageID # 145]. The Court finds that such facts are indisputably sufficient to constitute minimum contacts with the United States. Therefore, an exercise of jurisdiction over these defendants would be consistent with the Constitution and laws of the United States. The third requirement of the personal jurisdiction test is satisfied as to all of these particular defendants.

Having found that all of these defendants were properly served, that these cases are related to proceedings brought under Title 11 of the United States Code, and that the exercise of jurisdiction would not be inconsistent with the Constitution or any laws of the United States, the Court concludes that it has personal jurisdiction over defendants Doe, Heuser, Solis, Brown, and Sheehan. Therefore, the defendants' motion to dismiss all claims against these defendants for lack of personal jurisdiction will be **DENIED**.

## B. Rule 12(B)(6)/FAILURE TO STATE A CLAIM

Additionally, the defendants argue that the plaintiffs' claims should be dismissed for failure to state a claim. Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Moreover, Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all of the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *See Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The defendants argue that the complaints fail the pleading standard set out above, and therefore must be dismissed. To begin with, the defendants assert that the complaints fail to allege any facts which would establish that the plaintiffs suffered any loss as a result of the defendants' actions; without such a showing of loss, they argue, all of the claims within the complaints are substantively insufficient. Further, the defendants assert that the complaints do not allege sufficient facts to state claims of unauthorized practice of law against the staff employees or attorneys of UpRight Law. Additionally, the defendants argue that the claims for negligence per se are insufficient because (1) the statute upon which the claims are predicated cannot support negligence per se claims; (2) the fees were disgorged so the plaintiffs have not suffered any injury;

and (3) the facts set out in the complaints fail to establish that the named defendants violated the cited statute. Regarding the professional negligence claims, the defendants assert that the plaintiffs have failed to identify any damage resulting from any actions of the defendants, and that even if there is damage, there is no showing that defendants breached the standard of professional care. The defendants also argue that the negligence per se and professional negligence claims are barred by the statute of limitations.

The Lead case outlines a fourth cause of action for fraud. The defendants in the Lead case also assert that the fraud allegations are insufficient because the complaint does not allege any facts showing intent to defraud, does not satisfy the particularity requirement of pleading, and, in any event, does not allege facts establishing that the plaintiff suffered any damages as a result of the defendants' actions.

The plaintiffs respond to the defendants' motions, arguing that the complaints sufficiently state viable causes of action against the defendants. First, the plaintiffs argue that the phone calls at issue in the complaints sufficiently show that the representations made by the defendants constituted the unauthorized practice of law. Further, the plaintiffs argue that the defendants' refund of the fees does not absolve them from liability as to their unauthorized practice of law claims, and that they have sufficiently alleged actual damages resulting from the defendants' conduct. Additionally, the plaintiffs argue that the negligence per se claims and the legal malpractice claims are all sufficiently pleaded and are not time barred by any statute of limitations. The plaintiff of the Lead case asserts that the claim for fraud is sufficiently pleaded, and therefore should not be dismissed.

### 1. Count One: Unauthorized Practice of Law

Both plaintiffs assert that each of the defendants individually engaged in activity which constitutes the unauthorized practice of law ("UPL"). Such activities are prohibited by Tennessee law. *See* Tenn. Code Ann. § 23-3-101, *et seq*. Tennessee provides a private cause of action for "[a]ny person who suffers a loss of money or property, real, personal or mixed, or any other article, commodity or thing of value wherever situated, as a result of an action or conduct by any person that is declared to be unlawful under § 23-3-103, § 23-3-104 or § 23-3-108." Tenn. Code Ann. § 23-3-112(a)(1).

Tennessee Code Annotated § 23-3-103 provides in pertinent part:

(a) No person shall engage in the practice of law or do law business, or both… unless the person has been duly licensed and while the person's license is in full force and effect, nor shall any association or corporation engage in the practice of the law or do law business, or both. However, nonresident attorneys associated with attorneys in this state in any case pending in this state who do not practice regularly in this state shall be allowed, as a matter of courtesy, to appear in the case in which they may be thus employed without procuring a license, if properly authorized in accordance with applicable rules of court, and when introduced to the court by a member in good standing of the Tennessee bar, if all the courts of the resident state of the nonresident attorney grant a similar courtesy to attorneys licensed in this state.

Tenn. Code Ann. § 23-3-103(a). The statute defines "practice of law" as:

the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, or referee or anybody, board, committee or commission constituted by law or having authority to settle controversies, or the soliciting of clients directly or indirectly to provide such services.

Tenn. Code Ann. § 23-3-101(3). "Law business" is defined as

the advising or counseling for valuable consideration of any person as to any secular law, the drawing or the procuring of or assisting in the drawing for valuable consideration of any paper, document or instrument affecting or relating to secular rights, the doing of any act for valuable consideration in a representative capacity, obtaining or tending to secure for any person any property or property rights whatsoever, or the soliciting of clients directly or indirectly to provide such services.

Tenn. Code Ann. § 23-3-101(1).  Regarding Tennessee Code Annotated § 23-13-101, the Tennessee Supreme Court has noted that "the acts enumerated in the definitions of 'law business' and 'practice of law' contained within Tenn. Code Ann. § 23-3-101 (1994), if performed by a non-attorney constitute the unauthorized practice of law only if the doing of those acts requires 'the professional judgment of a lawyer.'" *Petition of Burson*, 909 S.W.2d 768, 776 (Tenn. 1995).

The plaintiffs assert that various members of UpRight Law engaged in the unauthorized practice of law through their communications and representations over the phone, as well as their communications in person with the debtor.  The Lead case complaint specifically alleges that defendant George Doe, a staff employee not licensed to practice law in any jurisdiction, engaged in the unauthorized practice of law and doing of law business over the phone by:  (1) soliciting and advising the debtor as to what Chapter of bankruptcy to file under; (2) soliciting and advising the debtor that she should file a bankruptcy case; (3) soliciting and advising the debtor that she would be able to keep her truck through bankruptcy; and (4) soliciting the debtor to use UpRight Law's services for filing a bankruptcy case. [Lead case, doc. 1 at ¶¶ 48-49].[16]

Next, the Lead case alleges that George Doe transferred the phone call to Austen Heuser, a staff attorney for UpRight Law, who is licensed to practice law in Illinois but not in Tennessee. The complaint alleges that, during this call, Heuser engaged in the unauthorized practice of law and doing of law business over the phone by:  (1) soliciting and negotiating the fee for the representation of the debtor; (2) soliciting and advising the debtor as to what Chapter of bankruptcy to file; (3) soliciting and advising the debtor that she should file a bankruptcy case; (4) soliciting

---

[16] The plaintiff argues specifically that the conclusion that the debtor would be able to keep her truck through the bankruptcy calls for the professional judgment of a licensed attorney.

and advising that she would have no problem filing a bankruptcy case; and (5) soliciting the debtor to use UpRight Law's legal services. [Lead case, doc. 1 at ¶¶ 51-52].

Furthermore, the Lead case alleges that Judy Lovely[17] engaged in the unauthorized practice of law and doing business of law by: (1) advising and soliciting the debtor on the requirements to file a petition for Chapter 7 relief; and (2) advising and soliciting the debtor shat she must file a Chapter 13 bankruptcy petition. [Lead case, doc. 1 at ¶¶ 57-58].

The allegations of the Member case are almost identical to the allegations of the Lead case, except for the individual actors involved. The Member case complaint alleges that Defendant Angelo Solis, a non-attorney staff member of UpRight Law, engaged in the unauthorized practice of law and doing of law business by: (1) soliciting the debtor by negotiating the fee for representation; (2) advising and soliciting the debtor as to what Chapter of the United States Bankruptcy Code under which she should seek relief; (3) advising and soliciting the debtor to file a case; (4) advising and soliciting that the debtor could keep her vehicle; (5) advising that she should seek a continuance or negotiate a payment plan with her creditors as a delaying tactic in state court; (6) advising that she would see a 700 credit score in two years; (7) and advising that she would have no problem filing a Chapter 7 bankruptcy petition. [Member case, doc. 1 at ¶¶ 48-49].

Further, the Member case alleges that defendant Jacob Brown, an Illinois licensed attorney for UpRight Law who is not licensed to practice law in the state of Tennessee, engaged in the unauthorized practice of law and doing business of law by: (1) advising and soliciting the debtor to cease making payments to unsecured creditors prior to filing for bankruptcy; (2) advising and soliciting the debtor on the effect of dischargeability on pre-petition debt; (3) advising and

---

[17] Although the sequential allegations of the complaint regard Jessica Odgie's actions which constitute UPL, this defendant has not yet appeared in this lawsuit. The parties' briefings do not specifically address this defendant.

soliciting the debtor on tactics and techniques to defend against a pending Tennessee state law case brought by a creditor; (4) advising and soliciting the debtor as to what Chapter of the United States Bankruptcy Code under which she should seek relief; and (5) advising and soliciting that the debtor would have no problem filing a Chapter 7 bankruptcy petition. [Member case, doc. 1 at ¶¶ 51-52].

Finally, the Member case alleges that defendant Matt Sheehan, a non-attorney staff employee of UpRight Law, engaged in the unauthorized practice of law and doing business of law by: (1) advising and soliciting the debtor on the appropriateness of the fees charged by UpRight Law; (2) advising and soliciting the debtor on how a Chapter 13 plan works, and how debts are paid under a Chapter 13 bankruptcy; (3) advising and soliciting the debtor on the Chapter 7 means test and the median income level required to file a Chapter 7 in the state of Tennessee; (4) advising and soliciting the debtor on the duties and responsibilities of a debtor in possession; (5) advising and soliciting the debtor that she would keep her car in a Chapter 13; and (6) advising and soliciting the debtor that she could buy a new car in a Chapter 13. [Member case, doc. 1 at ¶¶ 54-55].

Both complaints allege that the individual actions by these named defendants are imputed to UpRight Law because they were acting within the scope and course of their employment; therefore, UpRight Law engaged in the unauthorized practice of law and doing business of law.

### a. Damages Argument

The defendants in both cases argue that the plaintiffs' UPL claims are insufficient for a number of reasons. First, the defendants assert that the complaints fail to identify a "loss" capable of supporting a claim or cause of action under § 23-3-112(a)(1). [Lead case, doc. 21 at PageID # 122 and Member case, doc. 22 at PageID # 130]. The defendants point out that the fees paid by the debtors have been disgorged. [Lead case, doc. 21 at PageID # 122 and Member case, doc. 22

at PageID # 130].¹⁸  The argument follows that because the plaintiffs have failed to allege any actual loss, their UPL claims are deficient and must be dismissed.

The plaintiffs counter the defendants' damages argument by asserting that the refunding of attorneys' fees does not absolve the defendants from liability.  The plaintiffs claim that a reading of the Tennessee statute which provides for the cause of action for UPL, Tennessee Code Annotated § 23-3-112(a)(1), suggests that such an outcome would be discouraged because the statute permits the treble recovery of damages in an effort to punish individuals who engage in UPL.  The plaintiffs further argue that they suffered other damages from the defendants' UPL, including "actual damages due to the Defendants' actions, as well as other failures to adequately represent [them]."  [Lead case, doc. 27 at PageID # 217 and Member case, doc. 23 at PageID # 159].

The Court notes at the outset that although the complaints do not allege that the fees were actually disgorged, the plaintiffs do not contest the defendants' argument on this issue.¹⁹  Even though a reading of the complaints could lead to differing interpretations, the most reasonable conclusion—taking the complaints' allegation that the defendants agreed to disgorge the fees as true, and the plaintiffs' response, or lack thereof, to the defendants' argument—is that the fees have actually been disgorged in these matters.  Ultimately, the facts alleged in the complaints show that that the fees have been disgorged but, nevertheless, the plaintiffs have "suffered economic damages, including but not limited to the fees paid to Up[R]ight Law and later to the Law Offices

---

¹⁸ The complaints allege that the defendants ultimately agreed to have the fees disgorged.  *See* [Lead case, doc. 1 at ¶ 40 and Member case, doc. 1 at ¶ 40].

¹⁹ *See* plaintiffs' response [Lead case, doc. 27 at PageID # 217 and Member case, doc. 23 at PageID # 159], arguing only that an outcome of no recovery if defendants were able to refund the fees is discouraged by the language of the statute.

of Mayer and Newton ….."  [Lead case, doc. 1 at PageID # 13 and Member case, doc. 1 at PageID # 12].[20]

It is well understood that if the fees had not been disgorged, then there would be no difficulty in finding that the fees paid to UpRight Law were a "loss" suffered by the plaintiffs.  The question presented to this Court is whether the payment of fees, which have already been disgorged, is sufficient to constitute a "loss" as required under Tennessee Code Annotated § 23-3-112.  Neither of the parties have provided any case law explaining whether refunded fees may still constitute "loss" under this Tennessee statute, and this Court, through its own efforts, has been unable to find case law which is directly on point.  However, the Tennessee Court of Appeals has held that a full refund of actual damages will support a dismissal of a lawsuit under a similar statute. *See Gant v. Santa Clarita Laboratories*, No. M2005-01819-COA-R3-CV, 2007 WL 1048948, at *2-3 (Tenn. Ct. app. Apr. 5, 2007) (affirming Circuit Court dismissal in holding "…he stated that he had received his refund.  Thus, at the time of the Circuit Court proceedings, he had not suffered an 'ascertainable loss of money or property…' for which the court could grant him relief").[21]  In light of this, the Court agrees with the defendants that the fees paid to UpRight Law by the plaintiffs do not constitute a "loss" under Tennessee Code Annotated § 23-3-112(a)(1) in these circumstances because the fees have been disgorged.  Further, the plaintiffs' argument that the allowance of treble damages suggests that the plaintiff should still recover is unpersuasive because the statue itself requires the individual to "suffer a loss . . ." *before* they may bring an

---

[20] The Lead case alleges additional damages from the defendants' UPL which will be discussed below.

[21] The statute under consideration in *Gant* was Tenn. Code Ann. § 47-18-109, which provides a cause of action, and potentially treble damages, for "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . ." resulting from another person's use of an unfair or deceptive act or practice described in Tennessee Code Annotated § 47-18-104(b).  It is also of note that in *Gant*, the plaintiff's payment was refunded after he filed suit, and after the defendant had been served process.

action under Tennessee Code Annotated § 23-3-112(a)(1). Here, because the disgorged fees do not constitute a loss, treble recovery on these fees are not available.

The complaints also allege that the damages as a result of the defendants' UPL included the fees paid to UpRight Law and "later to the Law Offices of Mayer and Newton." [Lead case, doc. 1 at PageID # 13 and Member case, doc. 1 at PageID # 12]. Again, neither of the parties have cited any supporting authority on the issue of whether fees paid for subsequently retained counsel constitute "loss" for purposes of Tennessee Code Annotated § 23-3-112(a)(1). The plaintiffs, in their briefs, make no argument whatsoever showing how these fees constitute a loss suffered as a result of the defendants' UPL. The Court finds that the fees paid to the subsequently retained law firm do not constitute a "loss" suffered by the plaintiff either. The purposes of compensatory damages is to make the plaintiff whole. A recovery of the fees paid to the subsequently retained law firm to represent them in their pending bankruptcy proceedings would necessarily allow for the plaintiffs to recover more than they would be entitled had the original fees not been disgorged. Without any showing of how these fees constitute an actual compensable loss suffered as a result of the defendants' UPL, the complaints' assertions here are simply "a legal conclusion couched as a factual allegation." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, although this Court agrees with the plaintiffs that UpRight Law may be held liable for the actions of their employees, because the complaints fail to allege losses, the plaintiffs' argument for holding UpRight Law responsible for UPL is unavailing.

Because the Member case fails to allege any damages which constitute a "loss" under Tennessee Code Annotated § 23-3-112(a)(1), all of the causes of action for UPL in the Member case fail to state a claim upon which relief may be granted. Therefore, the defendants' motion to

dismiss in the Member case will be **GRANTED** as to Count I, and the causes of action for Unauthorized Practice of Law will be **DISMISSED** as to all defendants.

The Lead case goes further to allege "losses in the form of out-of-pocket expenses that [plaintiff] incurred traveling to Knoxville to meet with Defendant Lovely to sign documents that she would not have incurred if Up[R]ight [Law] had disclosed Defendant Gardiner's location." [Lead case, doc. 1 at PageID # 13]. The defendants argue that these travel expenses "bear no causal relationship with Plaintiff's UPL allegations." [Lead case, doc. 21 at PageID # 123]. Again, the plaintiff makes no argument in her response as to how these travel expenses are causally related to the defendants' UPL. The complaint states that these damages "would *not* have occurred if Upright had disclosed Defendant Gardiner's location." [Lead case, doc. 1 at PageID # 13 (emphasis added)]. Therefore, the question presented is whether the failure to inform the debtor of the location of her Tennessee-licensed attorney constitutes UPL. If not, then the plaintiff's travel damages could not be causally connected to her UPL claim, and, in turn, could not be a "loss" under Tennessee Code Annotated § 23-3-112(a)(1).

To determine this, the Court revisits the definition of UPL in Tennessee. The Tennessee Supreme Court has noted that "law business" and "practice of law" can only be acts which require "the professional judgment of a lawyer." *See Petition of Burson*, 909 S.W.2d 768, 776 (Tenn. 1995). Without question, the informing of a debtor—or the failure to inform—of the location of her Tennessee attorney does not constitute UPL under the Tennessee definition. Therefore, even assuming that the plaintiff suffered these expenses, such damages could not constitute "loss" suffered as a result of the defendants' UPL.

Because the Lead case fails to allege any damages which constitute a "loss" under Tennessee Code Annotated § 23-3-112(a)(1), all of the causes of action for UPL in the Lead case

fail to state a claim upon which relief may be granted.   Therefore, the defendant's motion to dismiss in the Lead case is likewise **GRANTED** as to Count I, and the cause of action for Unauthorized Practice of Law will be **DISMISSED** as to all defendants.

In accordance with the above findings, the Court need not analyze the defendants' remaining arguments regarding individual actions which fail to constitute the unauthorized practice of law.  This opinion does not address these remaining arguments, and therefore makes no ruling as to their merit.

### 2.  Count Two: Negligence Per Se

The plaintiffs also bring a cause of action against the defendants for negligence per se. Generally, Tennessee follows the common-law standard of conduct to which all persons must conform to avoid being negligent, that is, the "reasonable person under similar circumstances" standard.  *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).  However, in addition to this common-law standard, the Tennessee General Assembly may legislatively create legal duties in two ways: "[f]irst, the General Assembly may create a legal duty and then provide a civil cause of action for its breach"; and "[s]econd, the General Assembly may enact a penal statute that does not explicitly provide a civil remedy, and the courts may then derive a civil legal duty from the penal statute." *Id.* at 589.  The negligence per se doctrine is used to describe the latter of these legislatively created legal duties, and "enables the courts to mold standards of conduct in penal statutes into rules of civil liability."  *Id.*  The Tennessee Supreme Court has summarized the doctrine of negligence per se, stating

> [w]hen a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate.  In order to establish negligence per se, it must be shown that the statute violated was designed to impose a duty or prohibit an act for the

benefit of a person or the public.  It must also be established that the injured party was within the class of persons that the statute was meant to protect.

*Cook by and Through Uithoven v. Spinnaker's Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994) (second alteration in original) (citations and internal quotation marks omitted).  "The negligence per se doctrine does not create a new cause of action.  Rather, it is a form of ordinary negligence that enables the courts to use a penal statute to define a reasonable prudent person's standard of care."  *Rains*, 124 S.W.3d at 589 (citations omitted).

The simple fact that the General Assembly has enacted a penal statute which defines criminal conduct does not require courts to adopt it as a standard of civil liability.  *Id*. at 590.  Ultimately, it is a responsibility of the courts to consider a number of factors to determine whether the violation of a statute should trigger the negligence per se doctrine, including "[(1)] whether the plaintiff belongs to the class of persons the statute was designed to protect[,] and [(2)] whether the plaintiff's injury is of the type that the statute was designed to prevent."  *Id*. at 591.  Even if both of these initial requirements are satisfied, the courts must also consider a number of other factors including (1) whether the statute is the sole source of the defendant's duty to the plaintiff, (2) whether the statute clearly defines the prohibited or required conduct, (3) whether the statute would impose liability without fault, (4) whether invoking the negligence per se doctrine would result in damage awards disproportionate to the statutory violation, and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute.  *Id*. (citing Restatement (Second) of Torts § 874A cmt. h(1)).

Tennessee courts have clearly set out the elements of a prima facie case of negligence per se, stating

[i]n order to recover under the theory of negligence per se, a party must establish three elements.  First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public.  Second, the

injured party must be within the class of persons intended to benefit from or be protected by the statute. Finally, the injured party must show that the negligence was the proximate cause of the injury.

*Bennett v. Putnam County*, 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000).

Here, the plaintiffs allege that each of the defendants violated Tennessee Code Annotated § 23-3-101 *et seq.* Initially, the Court notes that the complaints are unnecessarily vague by failing to specifically allege which particular statute the defendants violated. Indeed, a literal reading of the complaints could suggest that the defendants are alleged to have violated all of the individual penal statutes included in Tennessee Code Annotated §§23-3-101 to -113.[22] Although such a broad reading could be construed to include allegations of all penal statutes within this list, this Court is not required to accept the plaintiffs' "labels and conclusions." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[23] Regardless, the Court finds that even if the complaints are broadly construed to allege negligence per se based on a violation of all penal statues under Tennessee Code Annotated § 23-3-101 *et seq.*, the facts alleged in the complaints, accepted as true, without question, fail to state a claim upon which relief may be granted for all penal statutes in the list of Tennessee Code Annotated § 23-3-101 *et seq.*, other than Tennessee Code Annotated § 23-3-103.

**Tennessee Code Annotated § 23-3-103**[24]

---

[22] Within the plaintiffs' imprecise allegations, there are multiple penal statutes, including Tennessee Code Annotated § 23-3-103 (providing that a person who engages in the practice of law without a valid license commits a Class A misdemeanor), Tennessee Code Annotated § 23-3-104 (providing that licensed attorneys who divide fees or compensation received in the practice of law with any person who is not a licensed attorney commit a Class C misdemeanor), Tennessee Code Annotated § 23-3-107 (providing that an attorney who offers improper testimony in certain cases commits a Class C misdemeanor), and Tennessee Code Annotated § 23-3-108 (providing that persons who falsely advertise themselves or hold themselves out as a lawyer commit a class E felony).

[23] The Court notes that the plaintiffs do not argue in their response that a violation of all of these penal statutes are alleged in the complaints, only that the defendants "attempt[ed] to practice law without a license." *See* [Lead case, doc. 27 at PageID # 218 and Member case, doc. 23 at PageID # 160].

[24] Based on the Court's findings regarding other the penal statutes in the plaintiffs' list, the Court references only Tennessee Code Annotated § 23-3-103 for the remainder of this section, contrary to the plaintiffs' consistent reference to Tennessee Code Annotated § 23-3-101 *et seq.*

Regarding the penal statute for the unauthorized practice of law, the complaints allege simply that each of the defendants violated this statute, and therefore are liable for the damages suffered by the plaintiffs. The defendants argue in their motions to dismiss that these claims should be dismissed because (1) the statute is not capable of supporting a negligence per se claim; (2) any damages suffered by the plaintiffs were disgorged and therefore they did not suffer any injury; and (3) the facts alleged in the complaints do not establish that the defendants violated the statute. Regarding their first argument, the defendants assert that the statute is "primarily an administrative prescription" and therefore is not capable of supporting a negligence per se claim. [Lead case, doc. 21 at PageID # 132 and Member case, doc. 22 at PageID # 140].

The plaintiffs respond that neither the Tennessee Supreme Court nor the Tennessee Court of Appeals has addressed whether Tennessee Code Annotated § 23-3-103 may be used as a basis to assert negligence per se, but argue that "the plaintiff[s] [are] within the class of persons designed to be protected by the statute, and the statute was designed to protect the public at large from being harmed by non-licensed attorneys." [Lead case, doc. 27 at PageID # 218 and Member case, doc. 23 at PageID # 160].

Before this Court considers whether the facts alleged are sufficient to support a prima facie case of negligence per se, it must determine whether the statute itself establishes a standard of care. Indeed,

> [w]hen alleging a statute or regulation based negligence *per se* claim, it is not sufficient for a plaintiff to assume . . . that the alleged violation of a statute automatically supports a claim of negligence *per se*. Even if the plaintiffs are within the class to be protected by the statute, a statutory negligence *per se* claim cannot stand unless the statute establishes a standard of care.

*King v. Danek Medical, Inc.*, 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000). Tennessee courts have gone on to explain that "[w]here a statutory provision does not define a standard of care but merely

imposes an administrative requirement, such as *the requirement to obtain a license* or to file a report to support a regulatory scheme, violation of such requirement will not support a negligence per se claim." *Id.* (emphasis added) (quoting *Talley v. Danek Medical, Inc.*, 179 F.3d 154, 159 (4th Cir. 1999)); *see also King v. Danek Medical, Inc.*, 37 S.W.3d 429 (Tenn. Ct. App. 2000) (holding that negligence per se claim based on violation of 21 U.S.C. § 351 lacked sufficient substantive content because the Food Drug and Cosmetic Act imposed administrative requirements rather than standards of care); *Thomas & Associates, Inc. v. Metropolitan Government of Nashville*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *7-10 (Tenn. Ct. App. June 6, 2003) (finding that defendant's failure to require and approve schedule of working days for utility relocation as required by Tennessee statutes did not support negligence per se claim).

This Court agrees with the defendants that Tennessee Code Annotated § 23-3-103 is not a penal statute which establishes a standard of care. Looking to the language of the statute itself, it states that it is unlawful for any person "to engage in the practice of law or do law business . . . unless the person has been duly licensed and while the license is in full force and effect." Tenn. Code Ann. § 23-3-103. Although there may be some merit to the plaintiffs' assertion that the statute "is not simply a regulatory statute," [Lead case, doc. 27 at PageID # 218 and Member case, doc. 23 at PageID # 160], there is little question that the statute serves at least some regulatory function; it requires individuals to acquire a license before they engage in particular activities. Unlike other penal statutes which have been found to establish a standard of care by Tennessee courts, this statute does not prohibit the conduct of practicing law altogether, rather, it only prohibits the practice of law without a license. *See e.g. Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 787 S.W.2d 934, 938 (Tenn. 1994) (holding that supplying alcoholic beverages to a minor and to a visibly intoxicated person in violation of Tenn. Code Ann.

§§ 57-4-203(b)(1) and (c)(1), a minor purchasing and consuming alcoholic beverages in violation of Tenn. Code Ann. § 57-4-203(b)(2)(A), and a minor driving an automobile in an intoxicated condition in violation of Tenn. Code Ann. § 55-10-401 *et seq*., all establish a standard of care and constitute negligence per se). Further, the plaintiffs fail to suggest to this Court why a requirement to obtain a license would be anything other than regulatory. Of course, the plaintiffs argue generally that the statute is a penal statute and that it protects the public, however, they do not provide any supporting case law or argument at all why the statute establishes a standard of care.

Although the plaintiffs attempt to bring their cause of action for negligence per se based on the defendants' violation of a penal statute, they have not shown how the failure to obtain a license would impose a defined standard of care in an ordinary negligence claim. *See Rains,* 124 S.W.3d at 589. Therefore, the plaintiffs have failed to sufficiently plead these counts of the complaints.

Additionally, even assuming *arguendo* that Tennessee Code Annotated § 23-3-103 did provide a standard of care triggering the negligence per se doctrine, the plaintiffs' claims are still insufficient given the above findings that the complaints fail to allege any loss as a result of the defendants' conduct. Even though Tennessee courts have been silent as to whether the negligence per se doctrine applies to Tennessee Code Annotated § 23-3-103, they are very clear that the final element of any negligence per se claim requires the plaintiff to show that "the negligence [of the defendants] was the proximate cause of the injury." *Bennett v. Putnam County*, 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000). Indeed, this Court's analysis above regarding the damages alleged in the complaints for the UPL claims similarly applies to the negligence per se claims.[25] Without

---

[25] *Compare* [Lead case, doc. 1 at ¶ 65 and Member case, doc. 1 at ¶ 61] *with* [Lead case, doc. 1 at ¶ 61 and Member case, doc. 1 at ¶ 58]. Also, the Court notes that the statute under which the negligence per se claims are brought directly relates to the civil cause of action prescribed by the General Assembly in Tennessee Code Annotated § 23-3-112; therefore, even if the negligence per se doctrine did apply under Tennessee Code Annotated § 23-3-103 to

any injury, the plaintiffs' claims for negligence per se necessarily fail to state a claim upon which relief may be granted.

For all of the above reasons, the defendants' motions to dismiss these counts are **GRANTED** and the negligence per se claims will be **DISMISSED** as to all defendants in both cases.

### 3. Count Three: Professional Negligence

The plaintiffs also bring a cause of action against particular defendants for professional negligence. To establish a prima facie case for professional negligence, a plaintiff must show: (1) the attorney owed a duty to the plaintiff; (2) the attorney breached that duty; (3) the plaintiff suffered damages; (4) the attorney's breach was the cause in fact of the plaintiff's damages; and (5) the breach was the proximate cause of the damage. *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001).

The complaints deviate slightly in the allegations found in Count Three. The Lead case alleges that defendants UpRight Law and Gardiner committed acts of professional negligence, while the Member case alleges only that the defendant UpRight Law committed acts of professional negligence.[26] There are sufficient differences between the allegations that the Court will analyze the cases separately.

**Lead Case: Annette Haynes**

After alleging that all defendants owed the debtor the duties of care, loyalty, and honesty, as well as legal obligations to competently and reasonably advise and represent the debtor during her bankruptcy proceedings, the complaint alleges that the defendants' actions fell below the

---

establish a standard of care, the loss requirement would coincide with the damages analysis set out above for the legislatively provided civil cause of action.

[26] *See* [Lead case, doc. 1 at ¶ 67 and Member case, doc. 1 at ¶ 63].

applicable standard of care when: (1) Gardiner advised the debtor that she must file a Chapter 13 petition rather than a less costly Chapter 7; (2) Gardiner failed to adequately supervise her secretary; (3) Gardiner failed to adequately advise the debtor of the requirement that she attend a 341 meeting in Knoxville, Tennessee; (4) Gardiner failed to obtain wet ink signatures on bankruptcy documents prior to filing; and (5) Gardiner failed to make 11 U.S.C. § 527 disclosures prior to filing the petition for bankruptcy relief. *See* [Lead case, doc. 1 at ¶ 67]. The complaint goes on to allege that "as the result of the negligence of Defendant Gardiner, [the debtor] suffered economic damages . . . ." [Lead case, doc. 1 at ¶ 68]. The Court notes that none of these allegations include any affirmative actions by UpRight Law.

In their motion, the defendants seemingly assert that the plaintiff has failed to state viable claims for professional negligence because (1) the plaintiff has not identified any damages caused by the alleged breach of the standard of care, and (2) the actions alleged do not constitute a deviation from the standard of care.

There is no question that lawyers owe a duty of care to their clients. The standard of care for legal malpractice in Tennessee is well established:

> [w]hen a person adopts the profession of the law, and assumes to exercise its duties in behalf of another for hire and reward, he must be held to employ in his undertaking a reasonable degree of care and skill; and if any injury result to the client from want of such reasonable care and skill, the attorney must respond to the extent of the injury sustained.

*Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 405 (Tenn. 1991) (quoting *Bruce v. Baxter,* 75 Tenn. 477, 481 (1881)). The Tennessee Supreme Court has held that while the Code of Professional Responsibility does not define standard of care for civil liability, "in a civil action charging malpractice, the standard of care is the particular duty owed the client under the circumstances of representation, which may or may not be the standard contemplated by the

Code;" however "[t]he Code may provide guidance in ascertaining lawyers' obligations to their clients under various circumstances." *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 405 (Tenn. 1991). Given the allegations set out in the complaint, the plaintiff has specifically pleaded that defendant Gardiner and defendant UpRight Law owed a duty to the debtor as a lawyer and as the law firm retained to represent her in bankruptcy proceedings. The Court finds that the pleading standard for the first element has been satisfied.

"When determining whether a lawyer breached a duty, the question becomes whether the lawyer failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by other attorneys practicing in the same jurisdiction." *Horton v. Hughes*, 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998). The question presented is whether Gardiner's acts, as alleged in the complaint, could constitute a breach of the duty of care owed to the debtor. The Court also finds that the plaintiff has alleged sufficient facts to satisfy the pleading requirement for this element. The facts alleged in the complaint which are set out above, if accepted as true, could support a finding that Gardiner breached her duty of care to the debtor in her representation.

However, the complaint has failed to allege that UpRight Law has committed any acts which breached their duty of care to the debtor, or that they can be held liable for the negligent acts of Gardiner.[27] Therefore, the defendants' motion to dismiss Count Three in the Lead case for

---

[27] Although the Court is aware that the plaintiff incorporates all of the paragraphs of the complaint in the professional negligence count, [Lead case, doc. 1 at ¶ 63], throughout the entire complaint, the plaintiff only alleges that the actions of the other defendants in committing the unauthorized practice of law may be imputed to UpRight Law because they were acting within the scope and course of their employment. The complaint fails to allege, and the plaintiff fails to assert in her response, that UpRight Law may, or even should, be held liable for the negligent actions of Gardiner, a Tennessee-licensed attorney. Particularly, the professional negligence count only alleges that the plaintiff sustained damages as a result of *Defendant Gardiner's* negligence. *See* [Lead case, doc. 1 at ¶ 68].

failure to state a claim is **GRANTED** as to the professional negligence claim against defendant UpRight Law.[28]

"[I]n all negligence cases, whether they be automobile related or medical or legal malpractice related, before a recovery can be had, the nexus between the negligence and the injury must be shown." *Lazy Seven Coal Sales, Inc.*, 813 S.W.2d at 407 (quoting *Stricklan v. Koella*, 546 S.W.2d 810, 813 (Tenn. Ct. App. 1976)). The Tennessee Supreme Court has held that

> there are three categories of attorneys' fees that may constitute damages resulting from legal malpractice: (1) "initial fees" a plaintiff pays or agrees to pay an attorney for legal services that were negligently performed, (2) "corrective fees" incurred by the plaintiff for work performed to correct the problem caused by the negligent lawyer, and (3) "litigation fees," which are legal fees paid by the plaintiff to prosecute the malpractice action against the offending lawyer.

*John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). Again, the complaint alleges that the plaintiff suffered damages from Gardiner's negligence including "fees paid to Up[R]ight Law and later to the Law Offices of Mayer and Newton." [Lead case, doc. 1 at PageID # 14]. These alleged damages do not fall squarely into any of the above categories of attorneys' fees for which a plaintiff may recover in a legal malpractice action. Regarding the fees paid to UpRight Law, these fees have already been disgorged, and therefore do not constitute any recoverable fee this Court may award.

Further, the fees paid to the subsequent law firm were not "corrective fees" in that they were not paid by the plaintiff to correct any problem caused by the negligent lawyer. Rather, these fees were paid to "complete [plaintiff's] Chapter 7 Bankruptcy." [Lead case, doc. 1 at PageID # 7]. Lastly, the plaintiff has not alleged that she has suffered any "litigation fees" in prosecuting the malpractice action against the defendants.

---

[28] The Court notes that, although not necessary to find here, the loss analysis below for defendant Gardiner would equally apply to this defendant, and therefore this claim against UpRight Law is likewise insufficient for failure to allege any injury resulting from UpRight Law's alleged professional negligence.

Because the plaintiff has failed to allege any injury from Gardiner's negligence, the plaintiff's claim in Count Three fails to state a claim upon which relief may be granted. Therefore, the defendants' motion to dismiss Count Three in the Lead case for failure to state a claim is **GRANTED** as to the professional negligence claim against defendant Gardiner.

### Member Case: Pamela Hagstrom

The Member case contains slightly different allegations than the Lead case for Count Three. Here, the Member case alleges only that UpRight Law

> committed acts of professional negligence because their actions fell below the applicable standard of care when: [(1)] Defendant Gardiner advised that Debtor Hagstrom had to file a Chapter 13 petition rather than a less costly Chapter 7; [(2)] Defendant Gardiner failed to properly file the required schedules and forms . . .; [(3)] Defendant Gardiner failed to properly secure wet ink signatures on bankruptcy forms and schedules prior to filing them; [and (4)] Defendant Gardiner failed to make the disclosures required by 11 U.S.C. [§] 527 prior to filing the petition for bankruptcy relief.

[Member case, doc. 1 at PageID # 13]. The losses alleged are consistent with the Lead case in that the plaintiff claims to have suffered damages from the fees paid to UpRight Law and later to the Law Offices of Mayer and Newton.

First, there are no allegations within the Member case complaint that Upright Law committed any acts which breached their duty of care to the plaintiff. Again, the plaintiff only alleges actions by defendant Gardiner in Count Three. Further, there is nothing in the complaint, nor within the plaintiff's briefing, to suggest that UpRight Law can, or even should, be held liable for any negligent act committed by defendant Gardiner. The Member case complaint alleges the damages differently than the Lead case complaint in that it does specifically refer to the negligence of the defendants rather than only the negligence of defendant Gardiner.[29] Nevertheless, the

---

[29] *Compare* [Member case, doc. 1 at PageID # 14] *with* [Lead case, doc. 1 at PageID # 14].

complaint fails to allege that UpRight Law is responsible for any alleged negligent acts committed by Gardiner. As such, the complaint fails to state a claim upon which relief may be granted.

Further, even if UpRight Law may be held liable for any alleged negligent acts committed by Gardiner, consistent with the Lead case, the Member case complaint fails to allege any compensable injury for which the plaintiff would be entitled to damages. Indeed, the fees paid to UpRight Law have been disgorged, and the fees paid to the Law Offices of Mayer and Newton similarly do not fall into any category of recoverable attorneys' fees. As such, the same analysis outlined above applies[30], and there is no cognizable loss alleged in the complaint for this professional negligence claim.

For the foregoing reasons, the defendants' motion to dismiss Count Three in the Member case for failure to state a claim is **GRANTED** as to the professional negligence claim against UpRight Law.

Having found that each of the complaints fail to state a claim upon which relief may be granted against any defendant for professional negligence, Count Three of the Lead Case and Count Three of the Member Case will be **DISMISSED** in their entirety.

### Statute of Limitations

As alternative grounds for dismissal, the defendants further argue that the statute of limitations bars the negligence per se and professional negligence claims. Because the Court has found that these claims are not sufficiently pleaded, it need not reach these arguments. Therefore, this Opinion makes no holding as to any statute of limitations issues.

### 4. Count Four: Fraud—Lead Case Only

---

[30] *See discussion supra for Count III Lead Case.*

As a fourth and final claim of the Lead case, the plaintiff alleges that the defendants committed fraud by intentionally misrepresenting to the plaintiff that she was required to file for Chapter 13 Bankruptcy relief. The complaint alleges that the defendant affixed the debtor's signature to a Chapter 13 agreement in order to obtain additional attorneys' fees from her, and that the defendants knew that this representation was false when it was made.

The defendants argue that the plaintiff's fraud claim is insufficient because (1) the complaint does not allege any particularized facts which show that Lovely intentionally misrepresented the plaintiff's eligibility for Chapter 7 relief; (2) that the complaint fails to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b) through its use of "information and belief" pleading; and (3) the complaint fails to allege facts which establish that the plaintiff suffered any loss, injury, or damage as a result of the alleged fraud.

The plaintiff briefly responds to the defendant's arguments, claiming that the complaint sufficiently pleads a claim for fraud because it alleges that "the representations from Defendant Lovely to Ms. Haynes that she didn't qualify for a Chapter 7 bankruptcy was an intentional misrepresentation of a material fact," and further that "the Defendants showed knowledge of this false representation by forging Ms. Haynes signature to the Chapter 13 retention agreement by copying it from a prior agreement." [Lead case, doc. 13 at PageID # 221].

The elements of a cause of action for fraud are: (1) an intentional misrepresentation of a material fact; (2) knowledge of the representation's falsity; (3) an injury caused by reasonable reliance on the representation; and (4) the requirement that the misrepresentation involve a past or existing fact. *Dog House Investments, LLC v. Teal Properties, Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014). Further, when alleging fraud, "a party must state with particularity the

circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Federal Rule of Civil Procedure 9(b).

Here the Court agrees with the defendants that the complaint fails to sufficiently allege a fraud claim against any named defendant.  Even if the Court were to assume that the heightened pleading requirement for fraud claims was satisfied, and that the defendants knew of the false representation, the complaint fails to allege any injury caused by reasonable reliance on the representation.  Indeed, if taking the allegations in the complaint as true that "the defendants did affix the debtor's signature to a Chapter 13 agreement in order to obtain additional attorney's [sic] fees from her," said fees were disgorged in full, and therefore the plaintiff has been put back into the same position as she was before any alleged fraud had occurred.  Without any injury caused by reasonable reliance on the representation, the fraud claim must fail.

Therefore, the defendants' motion to dismiss Count Four of the Lead Case for failure to state a claim is **GRANTED**, and the fraud claim will be **DISMISSED** as to all defendants.

### III.    CONCLUSION

This Court has personal jurisdiction over defendants Doe, Heuser, Solis, Brown, and Sheehan; therefore, it is hereby **ORDERED** that the defendants' motion to dismiss all claims against these defendants per Federal Rule of Civil Procedure 12(b)(2) is **DENIED**.

However, in both the Lead case and the Member case, the complaints fail to state a claim upon which relief may be granted as to every asserted cause of action.  For the reasons discussed above, it is hereby **ORDERED** that the defendants' motion to dismiss per Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** as to every claim, and all claims in the Lead case and the Member case are **DISMISSED WITH PREJUDICE**.[31]

---

[31] Although this Court previously granted the plaintiff's motion for additional time to serve defendant Odgie. [*See* Lead case, doc. 38], and understanding that dismissal was not sought on behalf of defendant Odgie throughout the

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

---

parties' briefings, [*See* Lead case, doc. 21 at n.1], in light of the Court's findings regarding the Lead case's failure to state a claim against any defendant, such a holding applies equally to the unserved defendant and necessarily requires dismissal of all claims against Odgie as well.